**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| FORBES MEDIA LLC; THOMAS BREWSTER, | No. 21-16233 |
| *Plaintiffs-Appellants,* | D.C. No. 4:21-mc-80017-PJH |
| v. | |
| UNITED STATES OF AMERICA, | OPINION |
| *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

| | |
|---|---|
| In re: APPLICATION OF FORBES MEDIA AND THOMAS BREWSTER TO UNSEAL COURT RECORDS, | No. 21-35612 |
| | D.C. No. 2:21-mc-00007-RSM |
| FORBES MEDIA LLC; THOMAS BREWSTER, | |
| *Petitioners-Appellants,* | |

2       FORBES MEDIA LLC V. UNITED STATES

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted August 12, 2022
San Francisco, California

Filed March 13, 2023

Before:  Johnnie B. Rawlinson, Bridget S. Bade, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress

**SUMMARY**[*]

**All Writs Act**

Affirming two district court orders denying petitions to
unseal court records, the panel held that neither the First
Amendment nor the common law provides a right of public

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

access to third-party All Writs Act technical assistance materials relating to ongoing criminal investigations involving unexecuted arrest warrants.

Under the All Writs Act ("AWA"), federal courts may order private parties to provide technical assistance to law enforcement to aid in the execution of arrest warrants. Here, Forbes Media and Thomas Brewster, a journalist and associate editor at Forbes ("petitioners"), filed petitions in the Northern District of California and the Western District of Washington seeking to unseal past All Writs Act orders issued to an online travel-booking technology company related to ongoing criminal investigations in which the United States had obtained arrest warrants but had been thus far unable to make the arrests. The district courts in California and Washington denied petitioners' motions, concluding for similar reasons, that there was no qualified First Amendment or common law right of public access to sealed AWA technical assistance materials relating to active warrants, and that the government had a compelling interest in non-disclosure while the criminal investigations remained ongoing.

The panel held that neither the First Amendment nor the common law rights to public access were so expansive as to encompass the materials sought here—materials that have traditionally been maintained under seal to avoid exposing the government's criminal investigations and compromising its pursuit of fugitives. In determining that the First Amendment's right of access did not attach, the panel applied the "experience and logic" test set forth in *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 7 (1986), and concluded that it was aware of no historical tradition of public access to proceedings and materials under the AWA to obtain technical assistance from third parties in executing

arrest warrants. By all accounts, these proceedings have traditionally taken place *ex parte* and under seal. Logic likewise militated against a qualified right of access under the First Amendment. Providing public access to AWA technical assistance proceedings in support of unexecuted sealed arrest warrants could easily expose sensitive law-enforcement techniques and endanger active criminal investigations.

Addressing whether common law conferred such a right, the panel held that petitioners had not demonstrated an "important public need" justifying disclosure. Given the similarities cross-cutting AWA third-party technical assistance proceedings, grand jury proceedings, and pre-indictment search warrant materials, as a matter of analogical reasoning, the materials petitioners sought here were not within the common law right of access. Finally, and regardless of whether the argument was advanced under the common law, the First Amendment, or both, the panel rejected petitioners' position that the district courts should have analyzed the right of public access question by focusing on the types of documents petitioners sought (motions, orders, etc.) rather than the nature of the AWA proceedings of which the documents were a part.

---

## COUNSEL

Grayson Clary (argued) and Katie Townsend, Reporters Committee for Freedom of the Press, Washington, D.C.; Jean-Paul Jassy, Jassy Vick Carolan LLP, Los Angeles, California; Ambika Kumar, Davis Wright Tremaine LLP, Seattle, Washington; for Plaintiffs-Appellants.

Joshua K. Handell (argued), Attorney, Appellate Section, Criminal Division; Lisa H. Miller, Deputy Assistant Attorney General; Kenneth A. Polite Jr., Assistant Attorney General; United States Department of Justice; Washington, D.C.; Matthew M. Yelovich, Assistant United States Attorney; Stephanie M. Hinds, United States Attorney for the Northern District of California; Office of the United States Attorney; San Francisco, California; Teal L. Miller, Assistant United States Attorney; Nicholas W. Brown, United States Attorney for the Western District of Washington; Office of the United States Attorney; Seattle, Washington; for Defendant-Appellee.

Mason A. Kortz, Cyber Law Clinic, Harvard Law School, Cambridge, Massachusetts, for Amicus Curiae Restore the Fourth.

Aaron Mackey and Jennifer Lynch, Electronic Frontier Foundation, San Francisco, California; Brett Max Kaufman, American Civil Liberties Foundation, New York, New York; Jennifer Stisa Granick, American Civil Liberties Foundation, San Francisco, California; Jacob A. Snow, ACLU Foundation of Northern California, San Francisco, California; Riana Pfefferkorn, Stanford Internet Observatory, Stanford, California; for Amici Curiae the Electronic Frontier Foundation, American Civil Liberties Union Foundation, American Civil Liberties Union Foundation of Northern California, and Riana Pfefferkorn.

**OPINION**

BRESS, Circuit Judge:

Under the All Writs Act, federal courts may order private parties to provide technical assistance to law enforcement to aid in the execution of arrest warrants. We are asked to decide whether the First Amendment or the common law creates a right of public access to third-party technical assistance proceedings relating to unexecuted arrest warrants in active criminal investigations. We hold that neither the First Amendment nor the common law confers such a right. Both district courts in this consolidated appeal reached the same conclusion. We affirm.

I

The All Writs Act (AWA), which has its origins in the Judiciary Act of 1789, provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Under the AWA, a federal court may "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). This includes the power to issue orders to persons "who, though not parties to the original action or engaged in wrongdoing," are nonetheless poised to aid "the implementation of a court order or the proper administration of justice." *Id.* at 174.

Consistent with this authority, we have recognized that the AWA may be used to order third parties to assist in the execution of warrants. *See Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979) ("The All Writs

Act . . . permits the district court, in aid of a valid warrant, to order a third party to provide nonburdensome technical assistance to law enforcement officers."). In practical terms, this means that federal courts may issue orders to private companies and others to provide technical assistance that will help law enforcement apprehend a suspect under an outstanding warrant, or that will otherwise aid an ongoing criminal investigation. One high-profile example is the Department of Justice's 2016 application for an AWA order that would have required Apple to provide technical information on how to bypass the security features of an iPhone belonging to a shooter in the San Bernardino terrorist attack. With this background, we now turn to the matter before us.

Thomas Brewster is a journalist and associate editor at Forbes Media who covers surveillance, security, and privacy issues. In March 2020, Brewster located an application for an AWA technical assistance order on the public docket of the District Court for the Southern District of California (S.D. Cal.). According to the clerk's stamp, the application had been unsealed on February 14, 2020. It appears this application was unsealed by mistake. Nevertheless, Brewster lawfully obtained it, and the application is now part of the public record in this case and others.

In the S.D. Cal. application, the Department of Justice requested an AWA order compelling Sabre, an online travel-booking technology company, "to assist in the execution of a federal arrest warrant by periodically reviewing its records for evidence that the subject of the arrest warrant is traveling." The application requested that, every week for six months, Sabre "provide representatives of the FBI complete and contemporaneous 'real time' account activity" for an individual subject to an active warrant. The S.D. Cal.

application explained that Sabre "processes roughly one third of all air travel reservations," and that other courts had previously invoked the AWA to order Sabre to assist in the execution of arrest warrants. For support, the government's S.D. Cal. application specifically cited several past AWA orders issued to Sabre by federal courts in the Western District of Washington, Northern District of California, Western District of Pennsylvania, and Eastern District of Virginia.

In July 2020, Forbes published an online article about the S.D. Cal. application entitled: "The FBI Is Secretly Using A $2 Billion Travel Company As A Global Surveillance Tool." This article, which Brewster authored, identified by name the fugitive who was the subject of the arrest warrant, as well as the details of the government's request for assistance to Sabre. The article also linked to an unredacted copy of the S.D. Cal. application, which was hosted on a third-party server. That linked application contained personal identifying information of the fugitive, including his foreign address and passport number.

Maintaining that AWA orders raise vital issues of public concern, Brewster and Forbes (petitioners) filed petitions in the Northern District of California and the Western District of Washington seeking to unseal court records for those matters referenced in the S.D. Cal. application. Each petition requested access to (1) any AWA order that had issued; (2) the government's application for such an order and any supporting documentation; (3) any other records, such as sealing motions and orders; and (4) the relevant docket sheets. The AWA orders in these cases related to ongoing criminal investigations in which the United States

had obtained arrest warrants but had been thus far unable to make the arrests.[1]

The district courts in California and Washington denied petitioners' motions. For similar reasons, the courts concluded that there is no qualified First Amendment or common law right of public access to sealed AWA technical assistance materials relating to active warrants, and that the government has a compelling interest in non-disclosure while the criminal investigations remain ongoing. Both courts also found that releasing the sealed information with redactions would not adequately protect the government's interests in ensuring that active criminal investigations are not jeopardized. The only notable difference between the two rulings is that the Northern District of California sua sponte ordered the government to give notice when its criminal investigation closed or became public, on the theory that, as to a potential right of access, "a different court may come to a different conclusion in a post-investigative context."

Petitioners appealed both decisions, and we consolidated the appeals. We have jurisdiction under 28 U.S.C. § 1291.

II

Matters decided in the courts are often of considerable public interest, and we have no reason to question petitioners when they assert that the public has an interest in knowing more about how AWA orders are used to enlist private companies to assist in criminal investigations. The question here, however, is not one of public interest but public access.

---

[1] Petitioners filed similar requests in the Western District of Pennsylvania and the Eastern District of Virginia, which we will discuss further below.

And greater public attention does not inevitably mean greater disclosure when competing interests are at stake.

The First Amendment and common law rights to public access that petitioners invoke are neither all-encompassing nor absolute. In this case, we hold that those rights are not so expansive as to encompass the materials sought here—materials that have traditionally been maintained under seal to avoid exposing the government's criminal investigations and compromising its pursuit of fugitives. Whether the analysis would be different when the arrests have been made and the criminal investigations completed is a matter for another day. Here, we hold that neither the First Amendment nor the common law provides a right of public access to sealed AWA technical assistance materials relating to ongoing criminal investigations involving unexecuted arrest warrants.

A

We begin with the First Amendment, which provides a qualified right of public access to certain governmental proceedings. *See Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 7 (1986) (*Press Enterprise II*); *First Amend. Coal. of Ariz., Inc. v. Ryan*, 938 F.3d 1069, 1074 (9th Cir. 2019). This right extends to some criminal proceedings, such as trials, jury-selection processes, and preliminary hearings. *First Amend. Coal.*, 938 F.3d at 1078 (citing *Press-Enterprise II*, 478 U.S. at 13; *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 512 (1984) (*Press-Enterprise I*); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (plurality op.)). The First Amendment right of access also extends to "various documents filed in criminal proceedings," such as plea agreements. *Id*.

But the First Amendment is not an all-access pass to any court proceeding or court record. As we have explained, although "[e]very judicial proceeding, indeed every governmental process, arguably benefits from public scrutiny to some degree," there are situations in which "complete openness would undermine important values that are served by keeping some proceedings closed to the public." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989). The public generally has presumptive access to judicial opinions, hearings, and court filings, but we would not think the public should be privy to judicial deliberations. The public similarly may view many aspects of jury trials, but we do not allow a live video feed from the jury room.

The same is true of certain aspects of criminal proceedings more generally. Grand jury proceedings are the classic example because, in that context, opening the courtroom and unveiling court files could dramatically imperil criminal investigations. Grand jury proceedings have thus long taken place outside of public view. *See Press Enterprise II*, 478 U.S. at 9; *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979); *Times Mirror*, 873 F.2d at 1215; *see also Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Ariz.*, 156 F.3d 940, 946 (9th Cir. 1998) ("Of course, there is no right of access which attaches to all judicial proceedings, even all criminal proceedings.").

The competing interests at stake in this area led the Supreme Court to adopt what has become known as the "experience and logic" test. *See Press-Enterprise II*, 478 U.S. at 8–9. To determine if a qualified First Amendment right of access attaches, we must consider (1) experience: "whether the type of proceeding at issue has been traditionally conducted in an open fashion," *Oregonian*

*Publ'g Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1465 (9th Cir. 1990); and (2) logic: "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. Even with a sufficient showing under this test, however, a qualified First Amendment right can still be "overcome by a compelling governmental interest" in nondisclosure. *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008).

Turning to the "experience" and "logic" analysis, we first conclude with little difficulty that petitioners have not made a sufficient showing under the "experience" prong. In evaluating "experience," we consider "whether the place and process have historically been open to the press and general public." *Press-Enterprise II*, 478 U.S. at 8. Here, we are aware of no historical tradition of public access to proceedings and materials under the AWA to obtain technical assistance from third parties in executing arrest warrants. By all accounts, these proceedings have traditionally taken place *ex parte* and under seal.

In this respect, AWA technical assistance proceedings are similar to other court proceedings relating to criminal investigations that have been traditionally conducted outside of public view. Grand jury proceedings, as we have noted, have long been kept secret. The same is true of pre-indictment search warrant proceedings. And in *Times Mirror*, the precedent most relevant to this case, we specifically held that "members of the public have no right of access to search warrant materials while a pre-indictment investigation is under way." 873 F.2d at 1211. We explained in *Times Mirror* that search warrants are traditionally issued upon the government's *ex parte* applications, which courts consider *in camera*. *Id.* at 1214.

We concluded that because the process for issuing warrants "has always been considered an extension of the criminal investigation itself," it "follow[ed] that the information disclosed to the magistrate judge in support of the warrant request is entitled to the same confidentiality accorded other aspects of the criminal investigation." *Id.* That same reasoning inheres here. AWA technical assistance proceedings, which have been traditionally conducted under seal, are part and parcel of criminal investigations in ways analogous to search warrant proceedings. And here, as in both *Times Mirror* and the grand jury context, "there is no history of unrestricted access" to the materials petitioners seek. *Id.*

Trying a different angle, petitioners argue that proceedings for injunctive relief are traditionally open to the public, and that because AWA technical assistance proceedings can lead to orders that are injunctive in nature, we should regard AWA technical assistance proceedings as presumptively public, too. We reject this logic, which operates at a stratum of abstraction far removed from the nature of the AWA proceedings at issue here. The Supreme Court has instructed that in this area of constitutional law, "the First Amendment question cannot be resolved solely on the label we give the event, *i.e.*, 'trial.'" *Press-Enterprise II*, 478 U.S. at 7. It is therefore not enough, as petitioners would have it, that AWA technical assistance proceedings may look like injunctive relief proceedings in some stylized sense. In an area of First Amendment jurisprudence driven by "functional concerns," *Cal. First Amend. Coal. v. Woodford*, 299 F.3d 868, 877 (9th Cir. 2002), petitioners' analogy to injunctive relief is far too formalistic. Any similarity between AWA technical assistance proceedings and typical requests for injunctive relief—which do not

fairly approximate AWA proceedings anyway—is insufficient to establish the history of open access required under the Supreme Court's "experience" inquiry.

The absence of experience, however, does not necessarily foreclose a qualified right of public access under the First Amendment. We have held that "logic alone, even without experience, may be enough to establish the right." *Copley Press*, 518 F.3d at 1026. But in this instance, logic likewise militates against a qualified right of access under the First Amendment.

As we noted above, under "logic" we consider "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. II*, 478 U.S. at 8. Not every request for public access fits that bill. The Supreme Court has recognized that, "[a]lthough many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Id.* at 8–9. We have thus made clear that "[w]here the harm caused by disclosure of judicial records outweighs the benefit of disclosure to the public, public access no longer 'plays a significant positive role in the functioning of the particular process in question.'" *United States v. Index Newspapers*, 766 F.3d 1072, 1087–88 (9th Cir. 2014) (quoting *Press-Enterprise Co. II*, 478 U.S. at 8).

In this case, we conclude that public access would not play a significant positive role in the functioning of AWA technical assistance proceedings involving outstanding arrest warrants that remain sealed. Indeed, far from playing a significant positive role, allowing public access in these circumstances would likely have deleterious consequences.

Our decision in *Times Mirror* is highly instructive on this point.

There, in holding that the First Amendment did not create a qualified right of access to search warrants and related materials at the pre-indictment stage of a criminal investigation, we concluded that "logic" did not support disclosure. 873 F.2d at 1214–18. We acknowledged the potential benefits of public access, noting that "open warrant proceedings might operate as a curb on prosecutorial or judicial misconduct." *Id.* at 1217 (citation and quotation marks omitted). And we further accepted that "public access would doubtless have some positive effect by increasing the flow of information to the public about the workings of the government and by deterring judicial and law enforcement officers from abusing the warrant process." *Id.* at 1218. These potential benefits are similar to the ones that petitioners advance in this case.

But these asserted benefits did not rule the day in *Times Mirror*, and they do not do so here. In *Times Mirror*, "logic" did not support public access because the "clearly legitimate" interests supporting disclosure were "more than outweighed by the damage to the criminal investigatory process that could result from open warrant proceedings." *Id.* at 1215. Analogizing to grand jury proceedings, which we viewed as "indistinguishable," we explained that open search warrant proceedings would jeopardize criminal investigations. *Id.* Among other things, if the search warrant proceedings or related documents were made public, "there would be the obvious risk that the subject of the search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed." *Id.* We also cited the importance of protecting the privacy of persons identified in the warrants, as well as the need to

avoid encouraging suspects to flee the jurisdiction. *Id.* at 1215–16.   We concluded that for these reasons, "the incremental value in public access is slight compared to the government's interest in secrecy at this stage of the investigation." *Id.* at 1218; *see also id.* at 1217 ("[W]hatever the social utility of open warrant proceedings and materials while a pre-indictment investigation is ongoing, we believe it would be outweighed by the substantial burden openness would impose on government investigations.").

Similar reasoning supports our analysis under the "logic" prong here.   Providing public access to AWA technical assistance proceedings in support of unexecuted sealed arrest warrants could easily expose sensitive law-enforcement techniques and endanger active criminal investigations.   Persons subject to sealed arrest warrants could learn not only that the government is on their trail but also the means the government is using to locate them. Criminal actors not yet subject to investigation might also catch on to the government's broader investigatory methods. This could make it harder to catch fugitives, who might change their practices to avoid capture.   Public disclosure could also, among other adverse consequences, create safety risks for law enforcement, lead to the destruction of evidence, and compromise sources who assist the government.

Included in the record in this case is a declaration from FBI Special Agent Jared Brown that lays out how the public disclosure of AWA technical assistance proceedings and records could impede criminal investigations.   We find this declaration persuasive.   It confirms that publicizing the details of secret law enforcement efforts to arrest suspected wrongdoers "would hinder, rather than facilitate, . . . the government's ability to conduct criminal investigations."

FORBES MEDIA LLC V. UNITED STATES          17

*Times Mirror*, 873 F.2d at 1215.  Indeed, because an arrest warrant pertains to a suspected criminal himself, disclosure of AWA technical assistance proceedings involving active arrest warrants may compromise criminal investigations to an even greater degree than the public release of search warrants.   This is especially so considering that the government uses AWA technical assistance orders to locate international fugitives, who may pose unique dangers to public safety.  The "logic" analysis of *Times Mirror* applies perforce in this context.

We acknowledge petitioners' central rejoinder that greater public scrutiny of AWA technical assistance proceedings could act as a check on government overreach. But that is the same worthy interest that we ultimately found insufficient in *Times Mirror*.  *See* 873 F.2d at 1215–16, 1218.  Faced with that precedent, petitioners theorize that the risk of government overreach is greater here than it was in *Times Mirror*.  In particular, petitioners contend that, in the search warrant context, the public will eventually have the chance to assess potential abuses of the search warrant process because of the availability of suppression motions and civil actions for violations of constitutional rights.  In petitioners' view, these kinds of back-end public checks are not available for AWA technical assistance orders.

We are not taken by petitioners' efforts to avoid the logical and persuasive force of *Times Mirror*.  Although *Times Mirror* mentioned the availability of after-the-fact safeguards such as suppression motions, *see id.* at 1218, this consideration was not dispositive, but was rather one piece of our broader "logic" balancing.  We did not dwell on the point long, perhaps because it goes only so far: search warrants are not invariably the subject of legal challenges, nor do they invariably lead to prosecutions.

Regardless, the notion that technical assistance proceedings will forever go unchallenged or unnoticed absent a constitutional right of access is overstated. Petitioners themselves assert that there today exists a robust public debate over these investigatory devices. The government acknowledges that AWA technical assistance orders may still be subject to challenge through different legal pathways, such as by the suspects themselves or by entities like Sabre, who receive the AWA orders. *Cf. United States v. Mountain States Tel. & Telegraph Co.*, 616 F.2d 1122, 1132–33 (9th Cir. 1980) ("[W]e believe that a telephone company whose cooperation in electronic surveillance is sought should be afforded reasonable notice and an opportunity to be heard prior to the entry of any order compelling its assistance."). Petitioners and others also remain free to raise their concerns with the political branches, which have the ability to craft more specific rules that cannot be enacted judicially under the guise of the First Amendment or the common law. And we reiterate that it remains a separate question whether presumptive rights of access would attach to AWA materials once the government's criminal investigation ends and the suspect is apprehended—an issue for a future case.

In short, whatever differences one might posit between AWA technical assistance proceedings involving active arrest warrants, on the one hand, and sealed pre-indictment search warrants, on the other, the differences are not significant enough to alter the overall "logic" balancing we performed in *Times Mirror*. "Logic," like "experience," tells us that there is no qualified First Amendment right of access to AWA technical assistance proceedings and materials relating to unexecuted arrest warrants in ongoing criminal investigations.

B

We turn next to whether the common law confers such a right. Courts have recognized a common law "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). The Supreme Court has emphasized, however, that this right "is not absolute." *Id.* at 598. Under our case law, "*[u]nless* a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)) (emphasis added). When that presumption attaches, the party seeking to overcome it must point to "compelling reasons" supporting sealing, supported by specific factual findings. *Id.*

As we just noted, however, there is an important "unless" here: the common law presumption of access does not even come into play for court records "traditionally kept secret." This carve-out is a "term of art" that refers to materials for which "there is 'neither a history of access nor an important public need justifying access.'" *Id.* at 1184–85 (quoting *Times Mirror*, 873 F.2d at 1219; emphasis omitted). Thus, under the common law, records that have "traditionally been kept secret for important policy reasons" are "not subject to the right of public access at all." *Id.* at 1178.

Our cases have not been precise in detailing how the First Amendment and common law rights may differ in scope once the rights attach, although we have observed that "[t]he First Amendment is generally understood to provide a stronger right of access than the common law." *United*

*States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1197 n.7 (9th Cir. 2011). The question here, however, is whether the rights attach in the first place. And our cases indicate that, in considering that threshold question, the common law, like the First Amendment, turns on roughly similar considerations of historical tradition and the risks and benefits of public disclosure. *See Kamakana*, 447 F.3d at 1184–85.

The paradigmatic examples of records not subject to the common law right of public access are, once again, "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *Id.* at 1185 (citing *Times Mirror*, 873 F.2d at 1219). But we have never suggested these are the only examples. Given the similarities cross-cutting AWA third-party technical assistance proceedings, grand jury proceedings, and pre-indictment search warrant materials, as a matter of analogical reasoning we conclude that the materials petitioners seek are not within the common law right of access, either.

As we already explained in the context of the First Amendment, there is no history of public access to AWA third-party technical assistance proceedings relating to active arrest warrants. In a footnote in their opening brief, petitioners identify several district court cases supposedly establishing such a tradition in the common law. *See United States v. Burns*, 2019 WL 2079832 (M.D.N.C. May 10, 2019); *Matter of the United States*, 256 F. Supp. 3d 246, 252 (E.D.N.Y. 2017); *In re Application of the United States for an Order Directing a Provider of Commc'n Servs. to Provide Tech. Assistance*, 128 F. Supp. 3d 478, 483–84 (D.P.R. 2015); *Application of the United States*, 407 F. Supp. 398, 411 (W.D. Mo. 1976).

FORBES MEDIA LLC V. UNITED STATES          21

We do not agree.  We doubt that a scattered set of non-binding trial court orders from other jurisdictions could demonstrate the required common law tradition of public access.  But in any event, these cases do no such thing. *Burns* involved a request to an already convicted defendant for technical assistance in unlocking his own hard drive. *Burns*, 2019 WL 2079832, at \*1–5.  And the remaining cases involved courts that declined to issue AWA technical assistance orders and that did not otherwise disclose sensitive information relating to active arrest warrants. These cases do not support a tradition of access to AWA technical assistance proceedings relating to ongoing criminal investigations.

Under the common law, petitioners likewise have not demonstrated an "important public need" justifying disclosure.  *Times Mirror*, 873 F.2d at 1219.  As we explained in the First Amendment context, disclosure of AWA technical assistance proceedings while the suspect is at large and the criminal investigation underway could compromise criminal investigations and risk exposing sensitive investigative methods.  *See id.* (explaining that there was no "important public need" for disclosure under the common law because "[a]s we explained in our discussion of appellants' First Amendment claim, the ends of justice would be frustrated, not served, if the public were allowed access to warrant materials in the midst of a preindictment investigation into suspected criminal activity").

Petitioners advance two other interests that they claim demonstrate an important public need for access to AWA third-party technical assistance proceedings.  Neither persuades us.  First, petitioners argue that disallowing access to these proceedings "would deny Congress the insight

necessary to craft better-tailored legislation" in this area. But there is no basis to believe that Congress needs our assistance on this front. Congress's ability to obtain information does not depend on the efforts of private litigants like petitioners because Congress has its own "broad" powers to "secure needed information in order to legislate." *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (citation and quotation marks omitted). It would not be appropriate for us to fashion a new common law right of access in service of a coordinate branch's alleged need for information when that branch has sufficient means at its disposal for obtaining the information it needs.

Second, petitioners maintain that nondisclosure of AWA technical assistance materials will "cut short public debate on the difficult, controversial legal questions characteristically presented in this context." This is essentially a reprise of the argument we rejected above, namely, that we should recognize a presumptive right of access because greater transparency can act as a check on government power. We again do not doubt this potential benefit of disclosure. But as in *Times Mirror*, we simply conclude that it is "more than outweighed by the damage to the criminal investigatory process" that would result. *Times Mirror*, 873 F.2d at 1215; *see also Index Newspapers LLC*, 766 F.3d at 1087 ("[I]t is well established that the harm caused by disclosure of certain judicial records more than outweighs any benefit caused by such disclosure."). And in this case, the notion that greater disclosure is critical for public debate is tempered by petitioners' own representation that there already exists "a wide-ranging public debate on the legitimate scope of court-ordered technical assistance."

C

Finally, and regardless of whether the argument is advanced under the common law, the First Amendment, or both, we reject petitioners' position that the district courts below should have analyzed the right of public access question by focusing on the types of documents petitioners seek (motions, orders, etc.) rather than the nature of the AWA proceedings of which the documents are a part. Petitioners maintain, in other words, that we should ask simply whether certain categories of court documents are usually publicly available, and, if so, treat them as falling within a presumptive right of access.

Petitioners' narrow focus on categories of documents is not correct. We have never held that in making the threshold right of public access determination, courts should consider the categories of documents sought abstracted from the proceedings in which they were generated. To the contrary, when we considered whether there was a right of public access to pre-indictment search warrant materials, we evaluated the nature of the proceeding itself. *See Times Mirror*, 873 F.2d at 1213 ("[T]he public has no right of access to a particular proceeding without first establishing that the benefits of opening the proceeding outweigh the costs to the public."); *id.* ("We know of no historical tradition of public access to warrant proceedings."); *id.* at 1215 ("[S]earch warrant proceedings, like grand jury proceedings, require secrecy."); *id.* at 1218 ("[W]e hold that members of the public have no First Amendment right to attend warrant proceedings, or to obtain the documents relating to those proceedings, while the investigation is ongoing but before indictments have been returned."); *see also, e.g.*, *Oregonian Publ'g Co.*, 920 F.2d at 1465 ("[W]e must decide whether the type of proceeding at issue has

traditionally been conducted in an open fashion."). This is the same analysis we conducted above.

In advancing their different approach, petitioners rely on our decision in *Index Newspapers*. But a closer reading of that case shows that petitioners' position lacks foundation. In *Index Newspapers*, two witnesses were subpoenaed to testify before a federal grand jury. 766 F.3d at 1079. They both filed motions to quash, which were denied. *Id.* After the witnesses continued to refuse to testify, the district court held contempt proceedings. *Id.* Those portions of the contempt proceedings that involved disclosure of the grand jury materials and proceedings were sealed, but the district court opened the contempt proceedings to the public when announcing that the witnesses were in contempt and ordering them confined. *Id.* A media organization later sought to unseal the records of the contempt proceedings. *Id.* at 1080. The district court concluded that there was "no public right of access to grand jury proceedings" or "proceedings held ancillary to grand jury investigations," but that it would unseal transcripts from the open portions of the contempt proceedings. *See id* at 1080–81.

On appeal, we carefully evaluated the right of access questions based on the nature of the proceedings themselves. We held that there was no First Amendment right of access to "(1) filings and transcripts relating to motions to quash grand jury subpoenas; (2) the closed portions of contempt proceedings containing discussion of matters occurring before the grand jury; or (3) motions to hold a grand jury witness in contempt." *Id.* at 1084–85. We further held that any common law right to these materials was "outweighed by the compelling government interest in maintaining grand jury secrecy." *Id.* at 1085. Our analysis turned not on the categories of individual documents sought or even on the

"particular proceedings" in that case, but on "*the class of proceedings as a whole*," which were integral to an ongoing grand jury investigation and involved information from that investigation. *Id.* at 1086 (emphasis added); *see also id.* at 1087 (explaining that "[l]ogic dictates that the record of proceedings concerning motions to quash grand jury subpoenas should be closed" because there are "several compelling reasons why grand jury proceedings should be kept secret").

We explained that, for important public interest reasons, grand jury proceedings were traditionally conducted in secret. *Id.* at 1084, 1086–87, 1092–93. It followed that materials relating to a motion to quash grand jury subpoenas and a government contempt motion—which were ancillary to an otherwise secret and ongoing grand jury investigation—were not subject to a right of access either, lest public access "frustrate criminal investigations." *Id.* at 1093 (quoting *Times Mirror*, 873 F.2d at 1213). This aspect of *Index Newspapers*, which focused on the nature of grand jury proceedings, fully supports the approach that the district courts followed here.

The same is true of that portion of *Index Newspapers* dealing with the contempt proceeding itself, part of which was conducted openly in district court. In *Index Newspapers*, we regarded the open contempt proceeding as "better resembl[ing] a criminal trial than . . . a grand jury proceeding." *Id.* at 1089 (quoting *United States v. Guerro*, 693 F.3d 990, 1001 (9th Cir. 2012)). From that crucial premise, we reasoned that the public may have a qualified right of access to a contempt hearing transcript "where there has been a request to make the hearing public, where the witness does not object, and where the court is satisfied that opening the hearing will not thwart the grand jury's

investigation or jeopardize other witnesses or evidence." *Id.* We similarly concluded that "because of the hearings' similarities to criminal trials," the orders of contempt and confinement were also subject to a presumptive right of public access, "at least when the grand jury witness does not object and the court determines that the grand jury investigation will not be compromised." *Id.* at 1093.

Properly considered, our analysis of the contempt proceedings in *Index Newspapers* did not turn on a formal typology of documents blind to the proceedings from which they arose. Instead, we considered the nature of the proceedings themselves, a task made more challenging because of the dual nature of the proceedings at issue. In *Index Newspapers*, we homed in on the fact that a contempt proceeding for refusal to testify before a grand jury effectively straddles the traditional secrecy of grand jury proceedings and the traditional openness of a criminal trial. *See id.* at 1089, 1093. The contempt proceedings, in other words, drew on and exposed a criminal investigation and grand jury process, but they involved a criminal prosecution as well, with resulting detention. In *Index Newspapers*, this entangling of traditionally secret and traditionally open proceedings provided the critical backdrop for how we analyzed which aspects of the contempt proceedings should be regarded as presumptively public in nature. Although it was necessary to discuss the various documents requested in parsing the dual-nature proceedings, our right of access analysis remained focused on the nature of the proceedings and not simply the formal categories of documents at issue.[2]

---

[2] Petitioners' reliance on *Index Newspapers* as grounds for obtaining docket sheets is therefore misplaced. In *Index Newspapers*, we directed

In this case, by contrast, there is no aspect of AWA technical assistance proceedings that is akin to a criminal trial or any other traditionally public proceeding. Instead, as we have explained, AWA technical assistance proceedings are more analogous to search warrant proceedings during pre-indictment investigations and grand jury proceedings, as to which there is no qualified right of public access. *See Times Mirror*, 873 F.2d at 1213–16, 1219. *Times Mirror* is thus the most relevant precedent here.

For these reasons, we conclude that there is no First Amendment or common law right of access to AWA technical assistance proceedings and materials relating to unexecuted arrest warrants in ongoing criminal investigations. It is therefore unnecessary for us to decide whether, even assuming a presumptive right of access, nondisclosure of these materials was justified. *See United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017); *Kamakana*, 447 F.3d at 1178–79.

D

Although we have held that petitioners do not at this time have a qualified right of access to AWA technical assistance proceedings, we do not decide whether the analysis would be different once the suspect is caught and the criminal investigation concluded. *Compare Times Mirror*, 873 F.2d

---

the district court to release docket sheets (with any necessary redactions) only because the district court had already unsealed certain information. *See* 766 F.3d at 1092. Without the docket sheet, "in practice, the public had no way of accessing the transcript the court intended to unseal." *Id. Index Newspapers* merely confirms that redacted docket sheets may be made available when a qualified right of public access otherwise attaches; it does not create such a qualified right for docket sheets or for any other specific type of record.

at 1211 (holding that "members of the public have no right of access to search warrant materials while a pre-indictment investigation is under way," but reserving "whether the public has a First Amendment right of access to warrant materials after an investigation is concluded or after indictments have been returned"), *with Business of Custer Battlefield Museum & Store*, 658 F.3d at 1192–94 (recognizing a qualified right of public access to search warrant materials after the criminal investigation has been terminated).

As we noted earlier, the district court in the Northern District of California anticipated this potential distinction and sua sponte ordered the government to give notice when its investigation closes or becomes public, so that petitioners could then file a new application to unseal the AWA materials in question. The court further ordered the government in the interim to file annual certifications stating that its investigation remains ongoing and that the underlying AWA technical assistance materials remain sealed. The government did not cross-appeal these aspects of the Northern District's orders, and we have no occasion to consider them.

But picking up on the Northern District's lead, petitioners now ask us to impose similar requirements in the Western District of Washington case. Petitioners further ask us to preemptively order unsealing once the relevant criminal investigations end. In the exercise of our discretion, we decline this request. Petitioners did not seek this relief in the Western District of Washington. Nor would it be proper for us to decide a hypothetical future request for unsealing or to issue blanket rules that transcend the case before us.

We leave to district courts in the first instance the
decision of whether to impose reporting requirements akin
to those that the Northern District of California adopted.  The
government—which at oral argument expressed some
receptivity to the Northern District's approach—may wish
to consider adopting its own policies in this area.  And in all
events, we leave to future courts resolution of the question
whether any or all portions of AWA technical assistance
proceeding materials fall within a presumptive right of
public access once an arrest warrant is executed and a
criminal investigation concluded.

### III

We briefly address post-argument developments
involving related litigation.  As we explained above, in the
inadvertently unsealed S.D. Cal. application that Brewster
located, the government referenced prior AWA orders to
Sabre issued not only in the Northern District of California
and Western District of Washington, but also in the Eastern
District of Virginia and Western District of Pennsylvania.
Petitioners sought unsealing in those other courts, too.

In the Eastern District of Virginia case, *United States v.
Burkov*, No. 1:15-cr-00245 (E.D. Va. Apr. 20, 2022), Dkt.
86, the government assented to the disclosure of certain
AWA materials because there, the suspect had been
apprehended, the investigation completed, and the criminal
proceedings closed.  In *Burkov*, the government stated that
although it "does not believe that the entry of a final
judgment and the defendant's release from imprisonment
will always be dispositive as to whether unsealing AWA
materials is appropriate," "on the facts of this case, the
government believes that sealing is no longer necessary."
Although petitioners try to fashion this into a grand

concession, we think the government's position in *Burkov* proves little here other than that the considerations may well be different when the suspect is arrested and the investigation complete.    That is the same question we reserved above.

The Western District of Pennsylvania case, like the cases before us, involved AWA technical assistance proceedings involving Sabre relating to an unexecuted arrest warrant, in which the criminal investigation was still ongoing. *See In re Application of Forbes Media LLC*, 2022 WL 17369017, at \*9 (W.D. Pa. Dec. 2, 2022). Brewster and Forbes moved to unseal the same types of AWA materials they sought here. On December 2, 2022, in an unpublished decision, the Western District of Pennsylvania granted petitioners' request in relevant part.

Without reaching the First Amendment question, the court found that the materials should be disclosed under the common law right of access. *Id.* at \*1 & n.2. In particular, the Western District of Pennsylvania analyzed the documents by formal category and concluded that they fell within the common law right, resulting in a presumption of access that the government had not overcome. *Id.* at \*4–10. The court acknowledged that courts in the Northern District of California and Western District of Washington—in the cases before us—had ruled differently. *Id.* at \*3. But the Western District of Pennsylvania perceived a difference between Third Circuit and Ninth Circuit law, asserting that the Third Circuit had yet to hold, as we held in *Times Mirror*, that pre-indictment search warrant materials should be treated like grand jury materials. *Id.* at \*3 & n.4. The Western District of Pennsylvania thus ordered the release of the requested AWA materials, with redactions to conceal the

FORBES MEDIA LLC V. UNITED STATES          31

identity of the suspect and the particulars of the criminal investigation. *Id.* at \*1, 10.

After it ruled on the specific redactions, the court in the Western District of Pennsylvania gave the government fourteen days to seek a stay of its ruling in either the district court or the Third Circuit. *Id.* at \*11. The government did not seek a stay. The redacted AWA materials were then released. They were filed publicly with our court in late December 2022, after oral argument in this case.

Without broaching the issue of whether there is any material difference between Third and Ninth Circuit law governing the common law right of access, it is sufficient to note that, as our analysis above would indicate, we respectfully disagree with the Western District of Pennsylvania's decision. That court improperly focused on the generic categories of documents requested, without fully considering the nature of the AWA technical assistance proceedings in which those documents were generated. Such an approach is not consistent with our precedents or with the basic principles underlying this area of law.

In post-argument letters, petitioners have suggested that because it failed to seek a stay of the Western District of Pennsylvania ruling, the government should be treated as having acquiesced in the release of AWA materials in the parallel cases before us involving the same petitioners, at least to the extent of the materials ordered released in Pennsylvania. We express no views on whether doctrines such as waiver or forfeiture could apply in these circumstances based on the government's decision not to seek a stay of the Western District of Pennsylvania ruling. We have only a limited record concerning the proceedings in the Western District of Pennsylvania, and the district

courts in the two cases before us have not had opportunity to consider this issue, which arose some months after this appeal was argued. Petitioners remain free to attempt to raise this issue in the district courts, as appropriate. *See* Fed. R. Civ. P. 60. But recent developments in the Western District of Pennsylvania do not undermine the district courts' decisions here based on the record that was before them, or our legal determination on the qualified right of access questions.

Under these circumstances, and for the reasons we have given, the judgments of the district courts are

**AFFIRMED.**